IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Paul Gray, ) | C/A No. 0:12-3320-JMC-PJG |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Warden Pate, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

    Petitioner Paul Gray ("Gray"), a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 20.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Gray was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 21.) Gray responded in opposition. (ECF No. 26.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Gray's Petition denied.

## BACKGROUND

    Gray was indicted in August 2001 in Charleston County for two counts of criminal sexual conduct with a minor (1st degree) (01-GS-10-4890, -4891) and one count of a lewd act upon a minor (01-GS-10-4892). (App. at 237-42, ECF No. 19-10 at 239-44.) Gray was represented by Leslie Sarji Locklair, Esquire, and David Wolf, Esquire, and on October 14, 2002 was tried by a jury and found guilty of a lewd act upon a minor and one count of criminal sexual conduct (1st degree). (See Order, App. at 331, ECF No. 19-10 at 333.) The circuit court sentenced Gray to eighteen years'

imprisonment for criminal sexual conduct (1st degree), eight years' suspended upon time served plus five years' probation for a lewd act upon a minor, all sentences to run consecutively.  (Id.)

Gray timely appealed and was represented by Daniel T. Stacey, Esquire, Chief Attorney of the South Carolina Office of Appellate Defense, who filed a final brief on Gray's behalf that presented the following claim:

> Whether the court erred in admitting expert testimony concerning the late reporting of the offense in this case, since the probative value of it was substantially outweighed by the danger of unfair prejudice to the appellant?

(ECF No. 19-1.)  The State filed a final brief on April 1, 2004.  (ECF No. 19-2.)  On November 1, 2004, the South Carolina Court of Appeals issued an order dismissing Gray's appeal.  (State v. Gray, Op. No. 04-UP-552 (S.C. Ct. App. 2007); ECF No. 19-3.)  The remittitur was issued on November 17, 2004.  (ECF No. 19-4.)

Gray filed a *pro se* application for post-conviction relief on May 26, 2005 ("2005 PCR") in which he raised the following issues:

> Ineffective assistance of counsel: counsel failed to obtain expert testimony to refute State[']s witness.

(Gray v. State of South Carolina, 05-CP-10-2277; App. at 266-72, ECF No. 19-10 at 268-74.)  The State filed a return.  (App. at 273-78, ECF No. 19-10 at 275-80.)  On June 1, 2007, the PCR court held an evidentiary hearing at which Gray appeared and testified and was represented by William L. Runyon, Jr., Esquire.  At the hearing, counsel for Gray clarified the issues in the application as raising ineffective assistance of counsel in that counsel failed to present an expert witness and in that counsel failed to call Gray's mother as a witness.  (App. at 281, ECF No. 19-10 at 283.)  By order issued October 10, 2008, the PCR judge denied and dismissed with prejudice Gray's PCR application.  (App. at 309-14, ECF No. 19-10 at 311-16.)



Gray filed a *pro se* appeal which the South Carolina Supreme Court ordered dismissed on January 22, 2009 based upon Gray's failure to timely serve opposing counsel. (App. at 315, ECF No. 19-10 at 317.)

Gray filed a second PCR application on April 22, 2009 ("2009 PCR") in which he raised the following issues:

>   (a)   i.   [Trial] [c]ounsel were ineffective for failing to object to indictments which were not stamped filed by the circuit court clerk.
>         ii.  [Trial] [c]ounsel were ineffective for failing to present expert witness testimony concerning the victim's delayed reporting of the alleged sexual abuse.
>
>   (b)   Appellate counsel was ineffective for failing to raise on appeal the trial court's error in allowing hearsay evidence in violation of the rules of evidence.
>
>   (c)   The Applicant did not voluntarily waive his right to appeal the denial of his prior PCR case and PCR counsel was ineffective for not properly filing notice of appeal.

(Gray v. State of South Carolina, 09-CP-10-2522; App. at 316-23, ECF No. 19-10 at 318-25.) The State filed a return. (App. at 325-30, ECF No. 19-10 at 327-32) The parties signed a consent order of dismissal filed June 29, 2010 that dismissed Gray's first two allegations in his 2009 PCR application with prejudice and granted Gray leave to file a belated petition to seek appellate review of his 2005 PCR application pursuant to Austin v. State.[1] (App. at 331-34, ECF No. 19-10 at 333-36.)

---

[1] Austin v. State, 409 S.E.2d 395 (S.C. 1991). "Under Austin, a defendant can appeal a denial of a PCR application after the statute of limitations has expired if the defendant either requested and was denied an opportunity to seek appellate review, or did not knowingly and intelligently waive the right to appeal." Odom v. State, 523 S.E.2d 753 (S.C. 1999); see also King v. State, 417 S.E.2d 868 (S.C. 1992) (explaining the appellate procedure in an Austin matter).



Gray, represented by Deputy Chief Appellate Defender Wanda H. Carter, Esquire, filed a petition for a writ of certiorari. (ECF No. 19-5.) Additionally, counsel for Gray filed a petition for a writ of certiorari pursuant to Austin v. State that presented the following issue:

> Trial counsel erred in failing to present as a witness the babysitter, who knew of the prosecutrix's motive to fabricate the sexual allegations against petitioner, and a defense expert witness to balance out and counter the state's expert witness, who testified in effect that delayed reporting corroborated sexual misconduct allegations, because the failure to challenge and offset this testimony meant that the jurors were left with the impression that delayed reporting is final or conclusive evidence of guilt in a criminal sexual misconduct case.

(ECF No. 19-6.) The State filed a return. (ECF No. 19-7.) On August 23, 2012, the South Carolina Supreme Court issued an order in which it granted the petition for a writ of certiorari pursuant to Austin v. State and, after Austin review, denied Gray's petition for a writ of certiorari from the final order in the 2005 PCR action. (ECF No. 19-8.) The remittitur was issued September 11, 2012. (ECF No. 19-9.) This action followed.

## FEDERAL HABEAS ISSUES

Gray's federal petition for a writ of habeas corpus raises the following issues:

> **Ground One:** Did the court err in admitting expert testimony concerning the late reporting of the offense in the case, where the expert testimony[']s probative value of it substantially was outweighed by the danger of unfair prejudice to applicant[?]
>
> **Ground Two:** Did court err in denying applicant issue that counsel was ineffective for failing to present expert witness[?]
> **Supporting Facts:** Applicant needed a defense expert witness to balance out and counter the State's expert witness, who testified in effect that delayed reporting corroborated sexual misconduct allegations, because the failure to challenge and offset this testimony me[a]nt that jurors were left with the impression that delayed reporting is final or conclusive evidence of guilt in a criminal sexual conduct case[.]

**Ground Three:** Did court err in denying applicant issue that counsel was ineffective for failing to call applicant['s] mother [the babysitter] for a witness[,] where she knew of the prosecutrix's motive to fabricate the sexual allegations against petitioner[?]

(Pet., ECF No. 1.)

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c)), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Habeas Corpus Standard of Review**

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1), (2). When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 410 (2000); see also Harrington v. Richter, 131 S. Ct. 770, 785 (2011); Humphries v. Ozmint, 397 F.3d 206 (4th Cir. 2005); McHone v. Polk, 392 F.3d 691 (4th Cir. 2004). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington,



131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Under the AEDPA, a state court's decision "must be granted a deference and latitude that are not in operation" when the case is being considered on direct review. Id. at 785. Moreover, review of a state court decision under the AEDPA standard does not require an opinion from the state court explaining its reasoning. See id. at 784 (finding that "[t]here is no text in [§ 2254] requiring a statement of reasons" by the state court). If no explanation accompanies the state court's decision, a federal habeas petitioner must show that there was no reasonable basis for the state court to deny relief. Id. Pursuant to § 2254(d), a federal habeas court must (1) determine what arguments or theories supported or could have supported the state court's decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of the United States Supreme Court. Id. at 786. "If this standard is difficult to meet, that is because it was meant to be." Id. Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.     Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir. 2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have



exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.     Summary Judgment Motion**

   **1.     Ground One**

Gray first argues that the trial court erred in admitting the testimony of an expert witness regarding a victim's delayed reporting of a criminal offense. For the reasons that follow, the court finds that the trial court's decision did not unreasonably misapply clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

The record of the trial is summarized by the South Carolina Court of Appeals as follows:

> In 2001, the then eight-year-old victim was living with her grandmother in McClellanville, South Carolina. Loretta Gray, Gray's mother, would baby-sit the victim everyday from the time the victim got home from school until her grandmother came home from work. The victim would often come to Gray's house to drop off her books, walk to her grandmother's house to get some food or a change



of clothing, and return to Gray's house until her grandmother returned from work. In April 2001, the victim went to stay with her mother in North Charleston for spring break, and she told her that Gray molested her. Gray was indicted by the grand jury on two counts of CSC with a minor and one count of performing a lewd act upon a minor.

The victim testified at trial regarding several incidents occurring sometime between January and April of 2001. According to the victim, Gray would often grab her and either lie on top of her, put his hands down her underwear, or, on two occasions, place his penis in her mouth in an attempt to force her to perform oral sex on him. The incidents occurred either at Gray's house or at the victim's grandmother's house. The victim also testified that she defended herself from Gray each time he demanded oral sex by biting him and by wielding a knife on one occasion when he placed his hands down her pants. The victim stated she was scared to tell anyone about the incidents, but she finally felt safe enough to tell her mother because she was not near Gray at the time.

The State sought to present the testimony of counselor Allison Rogers regarding how a delay in reporting abuse is common in child abuse cases. Gray moved to exclude her testimony and the trial court allowed an *in camera* examination of Rogers. Rogers testified *in camera* that "delayed disclosure," which is the time period between when abuse takes place and when the victim reports the abuse, is common in child abuse cases. Rogers stated children often delay disclosing abuse because they are embarrassed or they are afraid of the repercussions. Rogers also stated that children sometimes disclose with "tentative disclosure" in which they initially deny the abuse, tentatively disclose the abuse to test adults' reactions, and then fully disclose the abuse when they feel comfortable that they are safe and will be believed. Gray objected to the admission of the behavioral testimony as more prejudicial than probative. The trial court denied the motion, finding the testimony was relevant and any prejudicial effect was outweighed by the probative value.

After a short break, Rogers took the stand and repeated her testimony regarding delayed reporting in front of the jury. Gray was acquitted of one count of CSC, convicted of one count of first-degree CSC with a minor, and convicted of performing a lewd act on a minor. . . .

(App. at 262-63; ECF No. 19-10 at 264-65.)

During Rogers's *in camera* cross-examination at trial, she admitted that delayed disclosure is not used as a diagnostic tool for sexual abuse. (App. at 168; ECF No. 19-10 at 170.) In finding that the probative value of Rogers's testimony outweighed any prejudicial effect, the trial court noted Rogers's indication that delayed reporting was not conclusive and would not be used to make a determination regarding the presence of sexual abuse. (App. at 175; ECF No. 19-10 at 177.) Gray's



trial counsel had no objection to qualifying Rogers as an expert in child abuse and Rogers testified before the jury, without objection, that sexual assault victims often delay disclosure of abuse. (App. at 178, 180; ECF No. 19-10 at 180, 182.)

On direct appeal, Gray argued the probative value of Rogers' testimony was substantially outweighed by the prejudicial effect; therefore, the trial court erred in admitting such testimony. (App. at 246, 263; ECF No. 19-10 at 248, 265.)  The South Carolina Court of Appeals rejected Gray's argument pursuant to South Carolina state law.  See State v. Schumpert, 435 S.E.2d 859, 862 (S.C. 1993) (clarifying that "both expert testimony and behavioral evidence are admissible as rape trauma evidence to prove a sexual offense occurred where the probative value of such evidence outweighs its prejudicial effect"); see also State v. Weaverling, 523 S.E.2d 787, 794 (S.C. Ct. App. 1999) ("Such testimony is relevant and helpful in explaining to the jury the typical behavior patterns of adolescent victims of sexual assault.  It assists the jury in understanding some aspects of the behavior of victims and provides insight into the sexually abused child's often strange demeanor.") (citations omitted).  The  South Carolina Court of Appeals found that

> Rogers' testimony in the present case explained to the jury that child victims of sexual assault often delay reporting abuse until they are assured that adults will take them seriously and they will be protected.  The victim also testified that she did not reveal the abuse to her mother until she was away from Gray.  Rogers' testimony explained the victim's reaction, and it was thus more probative than prejudicial in this instance.  We find the trial court did not abuse its discretion.

(App. at 264-65; ECF No. 19-10 at 266-67.)

In response to respondent's motion for summary judgment, Gray argues that Rogers's testimony left the jury with the impression that delayed reporting was final or conclusive evidence of guilt in Gray's case and that the trial court should not have allowed Rogers to explain why sexually abused children would delay reporting an incident. (ECF No. 26 at 3-4.)  Gray also argues



that admission of such testimony violates Rule 403 of the South Carolina Rules of Evidence and constitutes a violation of Gray's right to due process under the Fourteenth Amendment. (Id.) "It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Furthermore, "in considering federal habeas corpus issues involving state evidentiary rulings, 'we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.' " Barbe v. McBride, 521 F.3d 443, 452 (4th Cir. 2008) (quoting Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000)). Upon review of all of the filings in this matter and the record before the court, the court finds that Gray cannot demonstrate that the state trial court and appellate court misapplied federal law, or that the alleged evidentiary error, if there even was one, was so extreme as to Gray a constitutionally fair proceeding. Gray cannot satisfy the standard in Barbe. Therefore, Gray is not entitled to habeas relief on this ground.

### 2. Grounds Two and Three

Gray next argues that trial counsel was ineffective in failing to (1) present an expert witness and (2) call Gray's mother as a witness.

### a. Controlling Law Regarding Allegations of Ineffective Assistance of Counsel

A defendant has a constitutional right to the effective assistance of counsel. To demonstrate ineffective assistance of counsel, a petitioner must show, pursuant to the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), that (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. Id. at 687; see also Williams v. Taylor, 529 U.S.

362, 391 (2000) (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims").

To satisfy the first prong of Strickland, a petitioner must show that trial counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution. With regard to the second prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Prejudice may be presumed when (1) a defendant is completely denied counsel at a critical stage of his trial, (2) counsel "entirely fails to subject the prosecution's case to a meaningful adversarial testing," or (3) "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." United States v. Cronic, 466 U.S. 648, 659 (1984).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Harrington, 131 S. Ct. 770, 788 (2010). The Court observed that while " '[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)). The Court instructed that the standards created under Strickland and § 2254(d) are both " 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions

were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

Although the Supreme Court has held that a decision containing a reasoned explanation is not required from the state court, in the case at bar this court has the benefit of the PCR court's written opinion, certiorari review of which was denied by the South Carolina Supreme Court. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (indicating that when a state appellate court affirms a lower court decision without reasoning, the court may look through the later, unreasoned, summary disposition and focus on the last reasoned decision of the state court). Having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons that follow that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred.

### b.     PCR Court Testimony and Findings

#### i.     Failure to Call Expert Witness

At the PCR hearing, Gray testified that he never discussed hiring an expert witness with trial counsel and did not know whether trial counsel made any decision regarding the use of an expert witness. (App. at 299; ECF No. 19-10 at 301.) Trial counsel, Leslie Sarji Locklair, testified that she acted as primary trial counsel for Gray and it is her general practice in preparing for trial to hire experts if the need for such testimony is recognized. (App. at 283, 301; ECF No. 19-10 at 285, 303.) Locklair testified that she had no recollection of considering the use of an expert witness in Gray's case and did not remember making a conscious decision not to hire an expert witness. (App. at 284; ECF No. 19-10 at 286.) Locklair stated that she did not know why she did not consider the use of an expert at Gray's trial and in retrospect wished that she had done so. (App. at 285-86; ECF No. 19-10 at 287-88.) Locklair testified that there was no financial impediment to hiring an expert



witness in Gray's defense and that she would have been able to find an expert witness had she considered the need for such testimony during trial preparation. (App. at 285, 288; ECF No. 19-10 at 287, 290.) Locklair testified that she studied seminar tapes made by Sara Schuh, the doctor who performed a physical examination on the victim and testified as an expert witness on child abuse at trial. (App. at 284, 286-87; ECF No. 19-10 at 286, 288-89.) Locklair testified that Schuh's objectivity was called into question on cross-examination when this expert admitted to inflammatory statements made about defense attorneys in the seminar tapes. (App. at 284, 286; ECF No. 19-10 at 286, 288.) Locklair also testified that she moved vigorously, but unsuccessfully, to keep testimony of Allison Rogers, a counselor who testified as an expert witness regarding delayed reporting, out of the trial. (App. at 287; ECF No. 19-10 at 289.) Locklair indicated that, on cross-examination, Rogers admitted that sometimes victims delay reporting a crime and sometimes they do not. (App. at 287-88; ECF No. 19-10 at 289-90.)

Trial counsel, David Wolf, testified that he acted as co-counsel in Gray's trial. (App. at 290; ECF No. 19-10 at 292.) Wolf testified that he and Locklair did not discuss hiring an expert witness and could not articulate a particular reason for not doing so. (Id.) Wolf testified that he and Locklair were focused on keeping Rogers from testifying and on attacking the probative value of any testimony presented by this expert witness. (App. at 290-91; ECF No. 19-10 at 292-93.) Wolf testified that he cross-examined Rogers in an attempt to show that delayed reporting has no value in determining the truthfulness of a victim's allegations. (App. at 293; ECF No. 19-10 at 295.) Wolf further testified that trial strategy did not include the hiring, or not, of an expert witness because the issue was never discussed. (Id.)

In closing arguments at the PCR hearing, Gray's PCR counsel stated that trial counsel presented an aggressive defense and that Locklair's cross-examination of Schuh "would have been

Page 14 of 20



devastating to me as a prosecutor," and "really called into question the reputation as an expert witness of someone who had prior to this been accepted as a preeminent authority." (App. at 303; ECF No. 19-10 at 305.) Gray's PCR counsel argued that, had trial counsel balanced their defense with an additional witnesses, "who knows what might have happened?" (App. at 304; ECF No. 19-10 at 306.) PCR counsel further argued that calling an expert "would have changed the result of the case." (Id.) The State's counsel argued that Gray did not present an expert to the PCR court "to testify to anything that would have been beneficial to them," rendering claims of any potential benefit from expert testimony speculative. (App. at 305; ECF No. 19-10 at 307.)

In rejecting Gray's claim of ineffective assistance of counsel associated with the failure to call an expert witness, the PCR court stated that

> [t]his Court finds that the trial attorneys are criminal trial practitioners with extensive experience in the trial of serious offenses. The attorneys never discussed hiring an expert witness. This Court finds that the Applicant has failed to prove that an expert would have been beneficial to Applicant's defense. The Applicant's contention that an expert witness would have benefited his defense is purely speculative. This Court finds no prejudice in counsel's failure to hire an expert.

(App. at 312; ECF No. 19-10 at 314.) The PCR court further concluded that Gray did not establish "any constitutional violations or deprivations before or during his trial and sentencing proceedings . . . . [and] Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation." (App. at 313; ECF No. 19-10 at 315.)

### ii.     Failure to Call Gray's Mother as a Witness

At the PCR hearing, Gray testified that he provided trial counsel with the names of family members, to include his mother, sister, and niece. (App. at 298; ECF No. 19-10 at 300.) Gray further testified that he asked trial counsel to consider calling these individuals as witnesses at trial and indicated that all family members would have provided similar testimony. (Id.) Gray's mother,



Loretta Buie ("Buie"), testified that she did not speak to trial counsel at the trial, but someone from the public defender's office visited her residence and listened to the information Buie could provide. (App. at 295-96; ECF No. 19-10 at 297-98.) Buie testified that she provided childcare for the victim, who lived with a grandmother. (App. at 295; ECF No. 19-10 at 297.) Buie testified that she believed Gray did not touch the victim. (Id.) Buie stated that the victim did not want to stay with the grandmother and fabricated the charges against Gray so that she could go live with her mother. (App. at 295, 297; ECF No. 19-10 at 297, 299.)

Primary trial counsel Locklair testified that she did not recall talking to Gray's mother, but thought trial co-counsel Wolf may have done so. (App. at 283; ECF No. 19-10 at 285.) Locklair further testified that, as a matter of general practice at the public defender's office, an investigator is assigned to question potential witnesses to determine the type of information they could provide at trial. (App. at 299-300; ECF No. 19-10 at 301-02.) Locklair indicated that she worked with two investigators at the public defender's office, but did not know which one would have been assigned to Gray's case. (App. at 300; ECF No. 19-10 at 302.) Locklair testified that, if she had talked to Gray's potential witness and determined that they could provide helpful information, they would have been called at trial. (Id.)

Trial co-counsel Wolf testified that he talked to Gray's mother in the course of the trial and discussed possible testimony with her. (App. at 291-92; ECF No. 19-10 at 293-94.) Wolf also testified that it is the practice of the public defender's officer to speak to potential witnesses, but did not have personal knowledge regarding whether an investigator interviewed Buie. (App. at 292; ECF No. 19-10 at 294.) Wolf recalled that he and Locklair felt that Buie's potential testimony was based on her belief or feelings about the case, rather than on personal knowledge. (Id.) Wolf testified that he had concern that Buie "wouldn't have probative information," but did not recall

discussing with Locklair whether Buie should be called as a witness. (Id.) Wolf stated that he believed he and Locklair would have called Buie as a witness if they had determined that she had any information that would be helpful to Gray's defense. (App. at 294; ECF No. 19-10 at 296.)

In rejecting Gray's allegation of ineffective assistance of trial counsel associated with the failure to call Gray's mother as a witness, the PCR court stated that

> [w]ith respect to counsel's alleged failure to call [ ] Ms. Buie, Applicant's mother, as a witness, this Court finds no defi[c]iency or prejudice resulted from counsel's representation. Mr. Wolf testified at the PCR hearing that he did not believe Ms. Buie was prepared to testify from personal knowledge at trial. Ms. Buie's testimony at the PCR hearing confirmed Mr. Wolf's belief. Ms. Buie merely testified that the victim made up the accusations against the Applicant because the victim wanted to go live with her mother. This Court finds that counsel made a reasonable trial strategy in not calling Ms. Buie as a witness at trial.

(App. at 312; ECF No. 19-10 at 314.) The PCR court found that Gray did not demonstrate a failure of trial counsel "to render reasonably effective assistance under prevailing professional norms" and did not present "compelling evidence that counsel committed either errors or omissions" in their representation of Gray. (Id.)

### c.    Conclusion

Upon thorough review of the parties' briefs and the record in this matter, the court finds that Gray cannot demonstrate that the PCR court unreasonably misapplied clearly established federal law as decided by the Supreme Court in rejecting these claims or that the PCR court made objectively unreasonable factual findings. See Williams, 529 U.S. at 410; 28 U.S.C. § 2254(d), (e)(1). As observed by the Harrington court, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 131 S. Ct. at 785.

The PCR court found that trial counsel's decision not to call Gray's mother as a witness constituted a reasonable trial strategy, because Buie's PCR testimony confirmed trial counsel's belief that Buie was not prepared to testify from personal knowledge. (App. at 312; ECF No. 19-10 at 314.) The PCR court further found no prejudice in trial counsel's failure to hire an expert witness because Gray failed to prove that an expert would have benefitted his defense. (Id.)

"In considering a claim again on a petition under 28 U.S.C. § 2254, a federal court owes considerable deference to the judgment entered in the state court proceeding." Yarbrough v. Johnson, 520 F.3d 329, 335 (4th Cir. 2008) (citing 28 U.S.C. § 2254(d), (e)). Moreover, Gray has the burden of rebutting by clear and convincing evidence the presumption that state court factual determinations are correct. 28 U.S.C. § 2254(e). In response to the respondent's motion for summary judgment, Gray asserts that "it was an error on behalf of the trial lawyer to not call an expert witness on delayed reporting," and that Locklair "admitted error in not presenting a defense expert witness." (ECF No. 26 at 5.) Gray further argues that trial counsel was ineffective in not calling a triage nurse, his mother, and niece as witnesses at trial.² (Id. at 8-9.) Gray contends that a "likelihood exists that [his] trial would have ended differently" if such witnesses had testified. (Id. at 7, 10.) Upon careful review of the transcript and the PCR court's order, for all of the reasons discussed by the PCR court, the court concludes that Gray has failed to establish that trial counsel's actions were error, much less that they were objectively unreasonable such that it rendered their performance deficient. Further, as held by the PCR court, Gray has failed to demonstrate that there

---

² To the extent that Gray is requesting that the court consider additional evidence in support of his claims, the court observes that its review for habeas corpus purposes is generally limited to the evidence that was placed before the state court. See Cullen v. Pinholster, 131 S. Ct. 1388, 1398, 1400 n.7 (2011); see also 28 U.S.C. § 2254(d)(2). Gray has not established that any exception to this general rule applies here. See Cullen, 131 S. Ct. at 1400-01; see also 28 U.S.C. § 2254(e)(2).



is a reasonable probability that the result of the proceeding would have been different if trial counsel had hired an expert witness and called Gray's mother to testify at trial.  Strickland, 446 U.S. at 694. Therefore, Gray has not shown that the PCR court's analysis of these issues misapplied clearly established federal law or, even if there was an error, that it was unreasonable.  See Williams, 529 U.S. at 410; see also Harrington, 131 S, Ct. at 785.  Accordingly, Gray is not entitled to habeas relief on these grounds.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 20) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 25, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).